*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. L. RUSSELL, Minor.

UNPUBLISHED
September 12, 2019

No. 347340
Oakland Circuit Court
Family Division
LC No. 2016-846403-NA

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor child pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j).[1]  We affirm.

## I. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues that the trial court erred by finding that statutory grounds for termination were established by clear and convincing evidence.  We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).  We review for clear error a trial court's findings regarding a statutory ground for termination.  *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).  "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made."  *Id*.

At the time the trial court found that grounds for terminating respondent's parental rights were established, MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) authorized termination of parental rights under the following circumstances:

---

[1] The trial court previously terminated the parental rights of the child's legal father.  He has not appealed the court's decision and is not a party to this appeal.

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[2]

* * *

---

[2] MCL 712A.19b(3)(g) was amended by 2018 PA 58, effective June 12, 2018. As amended, this subsection now provides:

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Although the order terminating respondent's parental rights was issued on December 21, 2018, the statutory-basis hearing was held in February and April 2018, and the trial court issued its opinion and order finding the existence of statutory grounds for termination on May 8, 2018, before the effective date of the amendment. In its opinion and order, the trial court cited the preamendment version of MCL 712A.19b(3)(g), which was in effect at the time. Although the parties cite the amended version of § 19b(3)(g) in their briefs on appeal, because the statutory-basis hearing was held before June 12, 2018, and the trial court addressed and decided this issue before that date, we conclude that the trial court properly applied the preamendment version of the statute in deciding whether termination was appropriate under § 19b(3)(g). In any event, as will be discussed, because we conclude that grounds for termination were also established under §§ 19b(3)(c)(*i*) and (j), and only one ground for termination need be established, *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111(2011), any error in relying on the preamendment version of § 19b(3)(g) would be harmless. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err by finding that termination of respondent's parental rights was justified under § 19b(3)(c)(*i*). The conditions that led to the child's adjudication involved respondent's alcohol abuse, which affected her ability to properly care for the child. Respondent also had a history of failing to protect and properly supervise another daughter, who had since become an adult. Respondent initially complied with the requirements of her parent-agency agreement, but then relapsed and ceased participating in services. At the time of the statutory-basis hearing, she had resumed participating in services. She resumed drug screening, obtained employment and housing, had taken responsibility for her flight from criminal charges and turned herself in, and she was attending AA meetings and church recovery services. However, these new efforts began only once the termination petition was filed. In addition, the caseworker, Emili Reel, testified that although respondent had resumed participating in services since her return to Michigan in July 2017, she was not fully compliant with her service plan.

The principal condition that led to the child's removal was respondent's alcohol abuse. The evidence showed that this condition had not been rectified. Respondent's testimony about how much alcohol she had routinely consumed in the past and her admissions concerning her conduct while intoxicated support the trial court's finding that respondent suffered from severe alcohol addiction. Although respondent initially appeared to comply with the requirement that she refrain from consuming alcohol, her father asserted that she manipulated some of her initial drug screenings by using a masking agent. Respondent also relapsed in March 2017, when she consumed alcohol and assaulted her mother, and then fled to Nevada and then Florida. She was convicted for the assaultive conduct against her mother and sentenced to probation and a jail term. At the time of the hearing, she had not reengaged in counseling. Although she had initially been ordered to participate in inpatient treatment as part of her criminal sentence, this condition was dropped and respondent did not attend either an inpatient or outpatient treatment program. The trial court did not clearly err by finding that this condition continued to exist.

Moreover, other conditions that led to the adjudication also continued to exist. Respondent had unstable housing for most of the time the child was in care. Reel testified that respondent had lived in at least five residences within the past year and was at her eighth home since the beginning of the case. Respondent admitted that, as of the date of the hearing, she still did not have adequate housing for the child. The trial court also found that respondent did not have stable employment during much of the case, and there was evidence suggesting that she may have again resorted to prostitution. Although respondent had obtained employment, she did not present evidence that she would be able to return to that employment after she served her jail sentence. Respondent also failed to provide documentation that she had resumed therapy. Respondent had no contact with her caseworker after she left for Nevada. She also refused to visit with Reel when Reel went to see her at jail in February 2018.

The trial court also did not clearly err by finding that there was no reasonable likelihood that respondent would be able to rectify the conditions within a reasonable time considering the child's age. The court relied primarily on respondent's lack of progress with her substance abuse problem and her lack of appropriate housing. Respondent acknowledged that she had an alcohol

abuse problem, that she had routinely been highly intoxicated in the past, and that she had consumed up to half a gallon of whiskey a day. Despite her prior relapse after months of sobriety, she stated during the hearing that she did not need inpatient treatment because she had again been sober for several months. The trial court found that respondent seemed to downplay the severity of her addiction. This finding is supported by the evidence. Respondent's lack of insight regarding the severity of her problem, her failure to complete counseling or substance abuse treatment, and her past relapse support the trial court's determination that there was no reasonable likelihood that this condition was likely to be rectified within a reasonable time considering the child's age. Respondent's past lack of stability with housing and her admission that her recent home was not suitable for the child also supported a finding that this condition was not likely be rectified within a reasonable time. Accordingly, the trial court did not clearly err by finding that § 19b(3)(c)(*i*) had been proven by clear and convincing evidence.

The same evidence also supports the trial court's reliance on §§ 19b(3)(g) and (j). A parent's failure to comply with his or her parent-agency agreement is evidence that the parent will not be able to provide proper care and custody and that the child may be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014). At the time of the statutory-basis hearing, respondent had only partially complied with her service plan. She remained in denial about the extent of her alcohol abuse even though her past public intoxication had placed the child at risk of harm. Although she completed parenting classes, she had not yet completed, or apparently even attended, any of the court-ordered anger management classes that were ordered as part of her probation. Even though she had been convicted of assault, she denied that she was responsible for the assault. And the trial court properly found that, without suitable housing, respondent could not properly care for the child.

Petitioner acknowledges that, with respect to § 19b(3)(c)(*ii*), the trial court did not identify what "other conditions" supported this statutory ground. The trial court did not support its conclusion concerning this ground with underlying factual findings. However, any error in citing § 19b(3)(c)(*ii*) as an additional ground for termination is harmless because only one statutory ground for termination need be proven, and the trial court did not clearly err by finding that the remaining statutory grounds for termination were supported by clear and convincing evidence. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111(2011).

## II. BEST INTERESTS

Respondent also argues that the trial court erred by finding that termination of her parental rights was in the child's best interests. Again, we disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination of parental rights is in a child's best interests is determined by a preponderance of the evidence. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A trial court's finding that termination of parental rights is in a child's best interests is also reviewed for clear error. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015).

In deciding whether termination of parental rights is in a child's best interests, a court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). A court may also consider the possibility of adoption, *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004), or whether it is likely "that the child could be returned to [the] parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). Where, as here, a child has been placed with a relative, the court must explicitly consider this fact, because placement with a relative weighs against termination. *In re Olive/Metts*, 297 Mich App at 43.

Respondent argues that the trial court did not duly consider her compliance with her service plan. She acknowledges, however, that the court found that this consideration was outweighed by respondent's unwillingness to believe the child's accusations of sexual abuse by Laity. The record indicates that respondent had made commendable progress since her return to Michigan. At the time of the best-interest hearing, she had been sober for a period of time, had apparent suitable housing, was employed, and had a strong support system through her church and its members. However, the trial court's concerns about respondent's long-term recovery and her ability to keep the child safe and support him emotionally were justified and supported by the evidence. Psychologist Shannon Conz testified that respondent not only refused to believe the child's allegations of sexual abuse, but also continued to deny that she had ever placed the child in danger in the past, despite her earlier plea to the contrary. Respondent continued to maintain at the best-interest hearing that her mother was a liar. Respondent did not attend anger management classes as ordered, or present evidence of any progress in anger management counseling. Her refusal to believe that the child had been abused continued even after she was presented with Laity's no contest plea and Conz's report about the child's evaluation and his statements. The foster care worker, Angelica Lindaman, testified that the child again began having behavioral problems and acting out after being alone with a male social worker.

The trial court's factual finding that respondent would not provide sufficient emotional support for the child is supported by the testimony about his need for further therapy, coupled with respondent's continued unwillingness to believe him. The court's factual finding that respondent continued to lack insight, which would impact her long-term recovery, is supported by her continued denial of the severity of her past actions. The court's finding that the child's maternal grandmother would be able to meet his needs is supported by Lindaman's testimony. The trial court's finding that it would be in the child's best interests to remain in his grandmother's care because she could provide the permanency, safety, and stability he requires is also supported by Lindaman's testimony.

Respondent argues that the trial court placed undue emphasis on the child's bond with his grandmother and lack of bond with respondent. She attributes this to the length of time the child had been placed with his grandmother and the fact that her visits with the child were suspended for much of the case. In making this argument, however, respondent takes no responsibility for her own conduct in creating this situation. It was respondent's own conduct that led to the child's placement with his grandmother, and respondent's diminished contact with him.

Respondent also argues that the trial court did not "fully consider" that she has undergone a religious conversion and "was showing signs of discarding denials and faulty belief systems."

She asserts that, in time, her relationship with her mother can be repaired and her relationship with her child can flourish if she were introduced back into his life. However, the evidence presented at the hearings below contradicts this optimistic view advanced by respondent. During the statutory-basis hearing, respondent maintained that her mother had lied to her caseworker and respondent continued to deny ever assaulting her mother, despite her conviction for this conduct. At the best-interest hearing, respondent similarly testified that she thought her mother was generally a liar. Respondent and her mother also held opposing positions regarding the child's veracity and need for treatment.

In sum, the trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel

-6-